35649.  BRUCE v. COUNTY OF TROUP, COMMISSIONERS, etc., *et al.*

Decided September 15, 1955—Rehearing denied October 17, 1955.

*Lovejoy & Mayer, H. T. Quillian, Jr.*, for plaintiff in error.

*J. R. Terrell*, contra.

NICHOLS, J. Section 92-5301 of the Code of 1933 provided for commissioners to be paid to the tax receivers and the tax collectors according to the amount of the tax digest in each county and at varying percentage rates. By the Act of 1938 (Ga. L. 1937-38, Ex. Sess., pp. 297, 298) shown in part in Code (Ann. Supp.) § 92-5301, § 92-5301 of the Code of 1933 was amended by striking it in its entirety and substituting a new schedule of amounts of net tax digests and percentage rates of payment. In Section 3 of the act provision was made for certain increased payment to tax collectors for collecting the State's part of the taxes, but we do not set forth the exact provisions because, as hereinafter shown, it was amended by the Act of 1939 (Ga. L. 1939, p. 370). By this act of 1939, section 3 of the act of 1938, supra, was amended to read as follows: "Be it further enacted by the authority aforesaid that as far as the tax-collectors are concerned the above rates and schedules shall apply upon the first 90% of the ad valorem net digests collected by the tax-collector. On all taxes collected in excess of 90% of the total of taxes due according to the tax net digest, the tax-collectors' commission shall be for such taxes 10% of all such collections, irrespective of the above and foregoing schedule and rates. And provided

further that in those counties where the tax-collector or tax-commissioner as the case may be is paid a salary this said commission shall be paid to the said tax-collector above and beyond the said salary. Provided however that in counties having a population of two hundred thousand or more according to the census of 1930 where the tax-commissioner or tax-collector as the case may be is on a salary the commissions referred to herein shall be paid into the treasury of such counties."

By the Act of 1949 (Ga. L. 1949, p. 1460) which applied to all counties in the State having, according to the official United States census of 1940, a population of not less than 40,000 inhabitants and not more than 50,000 inhabitants, and to all counties in this State which may have by any future census of the United States a population of 40,000 inhabitants and not more than 50,000 inhabitants, it was provided in part as follows: "Section 2: That in all counties described in Section 1 hereof, the fee system for compensating the officers herein named shall be abolished except those fees that are paid by the State to the tax collector and tax receiver (including tax commissioner) and the officers herein named shall on and after effective date hereof be paid salaries as herein provided instead of fees as under the present system except for the said fees to be paid by the State, as will be hereinafter provided." Section 3 provided that the salaries for county officers mentioned therein (the clerk of the superior court, the sheriff, the ordinary, the tax collector, the tax receiver, and the tax commissioner) shall be fixed at not less than $6,000 per annum and not more than $9,000 per annum. Section 6 provided in part: "That all fees, costs, percentages, forfeitures, penalties, allowances and all other prerequisites of whatever kind which shall be allowed by law after January 1, 1953, to be received or collected for services rendered after January 1, 1953, by any officer herein named (except the fees received from the State by the tax collector and tax receiver, or tax commissioner) shall be received and collected by all of said officers and each of them, for the sole use of the county in which they are collected, and shall be held as public moneys belonging to said county." Section 7 provided: "The salaries of the various officials herein fixed shall be their sole compensation, and all fees accruing after January 1, 1953, are hereby abolished so far as the same constitute

the compensation of said officers except that the tax collector and tax receiver or tax commissioner shall continue to receive as part of their compensation the fees from the State as hereinbefore provided; but the same schedule of fees and costs prescribed under existing laws shall remain for the purpose of ascertaining the sum or sums to be paid into the treasuries of the counties coming under this Act."

By the Act of 1951 (Ga. L. 1951, p. 815) section 3 of the Act of 1938, as amended by the act of 1939, supra, was amended by striking it in its entirety and substituting the following: "Be it further enacted by the authority aforesaid that as far as the tax collectors and tax commissioners are concerned, the rates and schedules prescribed by Section 92-5301 shall apply upon the first 90 percent of the ad valorem net digests collected by the tax collector. On all taxes collected in excess of 90 percent of the total of taxes due, according to the tax net digest, the tax collector's or tax commissioner's commission shall be for such taxes 10 percent of all such collections, irrespective of the above and foregoing schedule and rates; provided further, that the board of commissioners of roads and revenues or the ordinary in those counties having no board of commissioners may by appropriate resolution provide that the tax collector's or tax commissioner's commission shall be 10 percent of all taxes collected in excess of 80 percent of the total taxes due according to the net tax digest. Provided, further, that in those counties where the tax collector or tax commissioner is paid on a salary basis, the commission provided for herein shall be paid to the tax collector or tax commissioner in addition to the said salary. Provided, further, that in counties having a population of 75,000 or more according to the Federal census of 1950 or any future census where the tax collector or tax commissioner is paid on a salary basis, the commission provided for herein shall be paid into the treasury of such county." It will be noted that this act of 1951 reenacted the provisions of the act of 1939, supra, as to the schedule and the percentage rates to be paid to the tax collector and payment where more than 90% of the total taxes due were collected by him and the provision that "in those counties where the tax collector or tax commissioner as the case may be is paid a salary this said commission shall be paid to the said

tax collector above and beyond the said salary." However, with respect to the payment into the county treasury where the tax commissioner is on a salary this provision was made applicable to counties having a population of 75,000 or more instead of 200,000 or more. This act of 1951 also provides that "the board of commissioners of roads and revenues or the ordinary in those counties having no board of commissioners may by appropriate resolution provide that the tax collector's or tax commissioner's commission shall be 10 percent of all taxes collected in excess of 80 per cent of the total taxes due according to the net tax digest." The provisions of this act may be found in Code (Ann. Supp., 1951) § 92-5304, which is shown by the codifiers as having been codified from two named acts as amended by the act of 1951, supra.

By the act of 1953 (Ga. L. 1953, Jan.-Feb. Sess., p. 234) the schedule and percentage rates for payment to the tax receiver and the tax collector by the State were again revised as § 92-5301 of the Code, to apply to the net tax digests for the years beginning January 1, 1953. It was provided in Section 3 that "Nothing contained herein shall repeal the commission of 10 percent above 80 percent of the taxes collected on the net tax digest as provided in Georgia Laws of 1951, pages 815, 816 and 817." In Section 4 it was provided that the act "shall not apply to any county where the tax collector, tax receiver, or tax commissioner is on a salary basis only." Since by the act of 1951, supra, it was provided that in counties having a population of 75,000 or more, etc., where the tax collector or tax commissioner is paid on a salary basis, the commission payable by the State under § 92-5301 shall be paid into the county treasury instead of to him, the act of 1953 would not, under Section 4 above quoted, apply in such a case. However, Troup County has a population of less than 75,000. The act of 1953 is codified in the 1954 Supplement to the Code Annotated as § 92-5301.

The question here presented is whether or not the fees or commissions payable by the State to the Tax Commissioner of Troup County for collecting taxes belong to him and are not deductible from his salary of $8,000 as provided in the resolution of the board of county commissioners on September 28, 1952. A resume of the pertinent acts with certain observations may appro-

priately be made first.

Code § 92-5301, like its predecessors, provided for payment of commissions by the State to the county tax receiver and the tax collector at varying percentage rates, based on varying amounts of the net tax digest. The schedule of amounts and percentage rates was revised by the Act of 1938, supra, the Act of 1951, supra, and the Act of 1953, supra. The last revision is codified in the 1954 supplement to the Code Annotated as § 92-5301.

It was not until the Act of 1938, section 3, supra, that any provision was made as to payment in excess of the schedule and percentage rates then existing. Since however, section 3 of that act was amended by the Act of 1939, supra, we refer only to Section 3 of the last named act. It was therein provided that as to tax collectors the schedules and percentage rates would apply only as to 90% of the total amount to be collected, and that they should be paid 10% on the excess of 90% of the schedule which they collected. In other words, where the amount of a net tax digest to be collected in 1939 was, say, $20,000 and the percentage rate $2\frac{1}{2}\%$, a tax collector or tax commissioner would be paid by the State for collecting this amount $2\frac{1}{2}\%$ on 90% of $20,000, that is, $2\frac{1}{2}\%$ on $18,000 or $450 and 10% on the remaining $2,000 or $200, making a total amount due him of $650. This provision for increased pay was doubtless made as an incentive to the tax collector or tax commissioner to collect the maximum amount of taxes with a corresponding advantage to the State. Apparently realizing that the question would be raised as to whether or not the provision would apply to a tax collector on a salary with a county, the legislature provided in the same act that this commission should be paid to the tax collector "over and beyond his salary," but provided that in a county having a population of 200,000 or more according to the census of 1930, etc., and where the tax collector was on a salary, the commissions should be paid into the county treasury. We take judicial cognizance of the fact that Troup County did not have a population of 200,000 in 1930, and, accordingly, the provisions last mentioned did not apply to that county.

So far we do not apprehend that the defendants would insist that any fees or commissions due the tax commissioner prior to the Act of 1949, supra, would be payable into the county treasury.

By the Act of 1949, supra, however it is contended that all Troup County officers have been put on a salary basis, and that the fees received by the Tax Commissioner of Troup County must necessarily be deducted from his salary as fixed by Troup County. Much is said in the briefs of the respective parties as to whether or not this Act of 1949, being a special act, as held in *Tift* v. *Bush*, 209 *Ga.* 769 (75 S. E. 2d 805), must yield to the acts theretofore enacted and hereinbefore referred to, or whether for reasons urged, it controls. However, we see no conflict as to the disposition of the fees paid by the State, and no determination as to precedence of the act in this respect is needed. The following language of section 7 of the act is especially relied upon by the defendant in error as limiting the compensation of the tax commissioner to a salary only: "The salaries of the various officials herein fixed shall be their sole compensation," etc. This act applies to counties having a population according to the official United States census of 1940, etc., of not less than 40,000 inhabitants and not more than 50,000 inhabitants. We take judicial cognizance of the fact that by the said 1940 census the County of Troup had a population of 49,694, and, hence the act is applicable thereto. To properly appraise the meaning of the section from which the quoted extract is taken we should look, not only to all parts of the Act of 1949, supra, but to other legislation on the subject of the tax commissioner's commissions. In section 2 of the Act of 1949 it is provided that the fee system for compensating the officers named in the act shall be abolished in all counties described in section 1, but the act specifically excepts the "fees that are paid by the State to the tax collector and tax receiver (including tax commissioner)." Section 3 provides that salaries shall be fixed for each term at a stated time and not be changed during the term and at not less than $6,000 per annum and not more than $9,000 per annum. Under this section the salary fixed for the Tax Commissioner of Troup County would apply through 1956.

As demonstrating by contrast that the fees or commissions payable by the State to the tax commissioner were not for the use of the county, Section 6 provides that as to the other officials the fees collected by them after January 1, 1953, shall be for the sole use of the county. Now is there anything in Section 7

which deprives the tax commissioner of the commissions collected by him from the State? Manifestly not. While the language of the section began by stating that "The salaries of the various officials herein fixed shall be their sole compensation and all fees . . . are abolished," it is plainly shown that the provisions as to "sole compensation" and "abolition of fees" do not apply to the tax commissioner, it being stated that "the tax collector and tax receiver or tax commissioner shall continue to receive as part of their compensation the fees from the State as hereinbefore provided." But it is argued that by the words "as part of their compensation" it is shown that the amount of the commissions is to be deducted from the salary of the tax commissioner. Compensation may be salary alone or fees alone or both. The Constitution of 1945 declares in art. 11, sec. 2, par. 2 that "County officers may be on a fee basis, salary basis, or fee basis supplemented by salary, in such manner as may be directed by law." It should be noted that the act of 1949, supra, does not state "as part of their *salary*" but "as part of their *compensation.*" A salary is salary and nothing more, but compensation may obviously be in part salary and in part fees or commissions, all of which is consistent with the constitutional provision above mentioned.

The legislature is presumed to have been aware of this constitutional provision when they passed the Act of 1949, supra, and placed some county officers on salary without any supplementary fees or commissions, but provided that the fees received from the State by the tax collector or tax commissioner should not be paid into the county treasury. As evidencing that it was the intention of the legislature, even after the act of 1949, supra, that the fees or commissions from the State should belong to the tax collector or tax commissioner, the revised act of 1951, (Ga. L. 1951, p. 815) again provided that "On all taxes collected in excess of 90 percent of the total of taxes due, according to the tax net digest, the tax collector's or tax commissioner's commission shall be for such taxes 10 percent of all such collections, irrespective of the above and foregoing schedule and rates." By the same section the board of county commissioners was authorized to provide by appropriate resolution that the commission shall be 10% of all taxes in excess of 80% of the total taxes due according to the net tax digest. It removed all doubt as to whom fees from

the State should belong when it enacted in the same section that where the tax collector or tax commissioner is paid on a salary basis (not salary basis only) the commissions provided for in the act shall be paid to the tax collector or tax commissioner *in addition to his salary*. It was further provided, however, that in counties having a population of 75,000 or more according to the Federal census of 1950, the commissions provided for in the act shall be paid into the county treasury. Obviously this last provision has no application to Troup County. Again, by the act of 1953 (Ga. L. 1953, Jan.-Feb. Sess., p. 234) which revised the schedule and percentage fees for the tax receiver and the tax collector it was provided in Section 2 that "the schedule of commissions . . . shall apply to tax net digests for the years beginning January 1, 1953." Section 3 provides that "Nothing contained herein shall repeal the commissions of 10 percent above 80 percent of the taxes collected on the net tax digest as provided in Georgia Laws of 1951, pages 815, 816, and 817."

It can not seriously be contended that the resolution of the board of county commissioners on September 23, 1952, did not fix the salary of the tax commissioner at $8,000 per annum. It is provided in the resolution that "The tax commissioner of said county shall be paid a salary of $8,000 per annum," but it is urged that the salary is not $8,000 net because after the quoted language it is recited, "less any fees and commissions to which the tax commissioner may be entitled under the law from the State." Here is a plain instance of fixing a salary of $8,000 per annum but endeavoring to offset it in part by having the tax commissioner pay into the county treasury the fees or commissions which the law has declared shall be his. A similar recognition that his salary was fixed at $8,000 per annum appears immediately after the aforementioned language and it is again stated that *"such annual salary of $8,000* is subject to a reduction of the aggregate of fees and commissions" paid the tax commissioner by the State. (Italics ours.) The written judgment of the trial judge, finding in favor of the defendants' contentions, shows that the trial judge was of the opinion that a salary of $8,000 was fixed but that as "part of said salary" the amount of fees or commissions received by the commissioner should be deducted from his *salary*. That the board of county commissioners, at

the time of adopting the resolution of September 23, 1952, recognized that they were fixing a salary of $8,000 is inferable from their subsequent resolution of January 14, 1954, later rescinded, when they provided that the tax commissioner "be allowed 10% commission on the last 20% of the State and county taxes collected," an authority granted them by the act of 1951, supra. In short, the resolution of September 23, 1952, does not show an attempt, whether valid or not, to fix a salary which together with the fees or commissions from the State would amount to $8,000, but is clearly the fixing of an unqualified *salary* of $8,000 per annum and then endeavoring to offset it in part by depriving the tax commissioner of fees or commissions to which, to quote from the resolution, he "may be entitled under the law from the State." This can not be done.

Under the law and the facts the Tax Commissioner of Troup County is entitled to an annual salary of $8,000 from the county, without any deductions for any fees or commissions payable by the State, for the term of his office, January 1, 1953, through December 31, 1956. The judge of the superior court erred in not rendering a declaratory judgment accordingly, and in holding that the tax commissioner's·salary of $8,000 per annum as fixed by the board of county commissioners, was subject to a reduction in the amount of fees received by him from the State.

*Judgment reversed. Gardner, P. J., Townsend, Carlisle and Quillian, JJ., concur. Felton, C. J., concurs specially.*

FELTON, C. J., concurring specially. Construing the resolution of the board of county commissioners as a whole and giving consideration to all of its provisions, I am of the opinion that the intention of the commissioners was to fix the salary of the tax commissioner at $8,000 less the *amount* of fees and commissions due him from the State. I think the intention of the resolution was to fix the salary at such an amount as added to the commissioner's fees and commissions would equal $8,000 as total compensation. I do not think that the resolution was intended to deprive the commissioner of the fees and commissions due from the State. Under such a construction of the resolution it was illegal and void for two reasons which overlap. The purpose of the provisions of law allowing fees and commissions from the State in addition to salary was to furnish an incentive to the

commissioner and others similarly situated to collect more taxes. It follows that the intention of the laws providing for salaries of such officers was that the salaries be fixed at a definite amount uniform throughout a commissioner's term of office so that the commissions and fees from the State would be an inducement for the collection of more taxes by reason of the incentive of the prospect of greater remuneration. The resolution does not fix a uniform salary for each year of the commissioner's term and is therefore invalid. The second reason why the resolution is void is that it is against public policy in that it fixes the commissioner's remuneration at a definite sum each year and eliminates the added incentive intended by law for the collection of additional taxes. The majority opinion gives effect to only a part of the resolution and imputes to the board of commissioners an intention foreign to its purpose.

### On Motion for Rehearing.

NICHOLS, J. The defendants in error have filed in this court a motion for rehearing. A careful consideration of the motion discloses that it is merely a reargument, and no reason is shown why the judgment by this court should be changed, and the motion must be denied.

However, it is asserted in the motion that it is not made clear in the opinion that the plaintiff in error is not entitled to a commission of 10% on the collection of county taxes in excess of 90% of the amount to be collected and a "clarification" is sought.

The plaintiff in error joins in the request of the movant, and contends in his reply brief that he "is entitled to receive in addition to the salary of $8,000 and the commission on the State taxes collected by him, is entitled to a commission of 10% on all taxes, including county taxes as well as State taxes, collected in excess of 90% of the total taxes due according to the net tax digest in conformity with the provision of Code § 92-5304 as constituted after the 1951 amendment to that section."

Without conceding that any "clarification" of the opinion is needed with respect to the controversy, which was between the tax commissioner and the county authorities, but because the assignment of error on the judgment of the trial court caused us to enter into some discussion of commissions payable by the *State* to the Tax Commissioner of Troup County, and which we

held not deductible from the fixed salary of $8,000, we nevertheless are adding the following.

It will be observed from a reading of the opinion that we never recognized § 92-5304 in the 1951 supplement to the unofficial Annotated Code of Georgia as being any enactment of law in itself by the legislature. However, it does contain language which is found in the several acts from which it purports to have been codified, namely, Ga. L. 1937-38, Ex. Sess., pp. 297, 298; 1939, p. 370; 1951, pp. 815, 816. While it was appropriate to mention the antecedent acts, we pointed out in our opinion that all of the codified matter was in fact included in the 1951 act, supra, and we prefer to examine the several acts mentioned rather than the unofficial § 92-5304 cited by the respondent. It will be noted, however, that the first sentence of the cited section refers to Code § 92-5301 for the obvious purpose of making clearly understood the sentence which immediately follows with respect to the special commission of 10% to be paid to the tax commissioner and which manifestly would never have been enacted except for the basic § 92-5301. This last named section provides for compensation to each receiver and collector of State and county taxes. We shall now demonstrate that the payment to be made under this section is only for the collection of the State's part of the taxes, and is payable by the State and to be retained by the tax commissioner unaffected by any claim of the county.

It is not stated that under this § 92-5301 commissions are to be paid for collecting both State and county taxes, the words "each receiver and collector of State and county taxes" having reference to taxes that each collects, the schedule and rates being set forth as a basis for payment of commissions by the State to such officers. As will be seen later there was in force another Code section dealing with the commissions to be paid the officials for collecting *county* taxes. Provisions similar to those in § 92-5301 have appeared in all of the official Codes of this State and may profitably be consulted. In the Code of 1863, § 860, the Code of 1868, § 939, and the Code of 1873, § 936 reference was made to "each receiver and collector of *State taxes*." (Italics ours.) Although in the Code of 1882, § 936, the Code of 1895, § 967, and the Code of 1910, § 1234, in which a new schedule and

rates were set forth, the reference was to each receiver and collector of State and county taxes, the act of 1879 (Ga. L. 1878-79, p. 25) from which such sections were codified also provided, as will be seen in § 936 (a) of the Code of 1882, § 968 of the Code of 1895 and § 1235 of the Code of 1910 that "No tax collector shall in any event receive any greater or different rate of commission, or rate of payment for the collection of county taxes than he receives by this act for collecting *State taxes*." (Italics ours.) For some unaccountable reason this provision was omitted from § 92-5301 of the Code of 1933, but this error did not nullify the law. Here it is shown beyond question that commissions provided by the section we have been discussing are to be paid for collecting State taxes. This conclusion is reinforced by the fact that the compensation for collecting county taxes was provided for in another Code section with which the legislature is presumed to have been familiar. In the Code of 1863, § 492, the Code of 1868, § 554, the Code of 1873, § 520, the Code of 1882, § 520, the Code of 1895, § 410, and the Code of 1910, § 519 the following identical language appears in each: "The tax collectors shall be allowed the same commissions and fees for such collections [i. e. collecting county taxes] as they are allowed by law for the collection of the State tax." In the Code of 1933, § 92-3805, the words "county taxes" were expressly used. In the act of 1879, supra, the legislature, while setting up a new schedule and rates of payment, presumably recognized that § 520 of the Code of 1873, in effect at that time (Code of 1933, § 92-3805) provided that "The tax collectors shall be allowed the same commissions and fees for such collections [i. e. of county taxes] as they are allowed by law for the collection of State taxes" under § 936 of the Code of 1873 (Code of 1933, § 92-5301) and were taking care to emphasize in § 3 that no greater rate should be allowed for the collection of county taxes than for the collection of State taxes, conceivably because the amounts to be collected, under the ad valorem net digests, for the various counties would be much greater than for the State.

Thus it is clear that at the time of the adoption of the Code of 1933, § 92-3805 provided only for commissions for collecting county taxes and § 92-5301 for collecting State taxes. As shown in the opinion, Sec. 3 of the act of 1938 (Ga. L. 1937-38, Ex. Sess.,

pp. 297, 298) amended Code § 92-5301 by striking it in its entirety and substituting a new schedule and rates. In Sec. 3 of the act provision was made for the first time for certain increased payment to tax collectors, but this provision had reference only to State taxes due according to the collectible amount of the net tax digests prior to the year 1938, it being provided that "on all taxes collected in excess of 90% of the total of taxes due [under schedule in § 92-5301 theretofore in effect] according to the tax net digest, prior to the year 1938, the tax collectors shall be paid for collecting the State's part of such delinquent taxes 10% of all such collections, irrespective of the above and foregoing schedules and rates." Under the schedule and rates set up in this act of 1938, and effective on January 1, 1938, no payment could be made except in accordance with them, but as to the collection of State taxes due prior to 1938 the increased rate applied to the extent stated and without reference to or, as stated in the act, "irrespective of the . . . schedules and rates" which were to become effective on January 1, 1938.

By the act of 1939 (Ga. L. 1939, p. 370), sec. 3 of the act of 1938 was amended by striking the words "the State's part of" and the word "delinquent" so that the section would read "Be it further enacted by the authority aforesaid that as far as the tax collectors are concerned the above rates and schedule [shown in § 92-5301 as fixed by the act of 1938, supra] shall apply upon the first 90% of the ad valorem net digests collected by the tax collectors. On all taxes collected in excess of 90% of the total of taxes due according to the tax net digest, the tax collectors' commission shall be for such taxes 10% of all such collections, irrespective of the above and foregoing schedule and rates." Since the act of 1939 was amending the act of 1938, supra, and the latter act specifically amended Code § 92-5301, which we have demonstrated related only to commissions to be paid for collecting State taxes, it necessarily follows that the provision for increased compensation referred only to the collection of State taxes under § 92-5301. The words "the State's part of" were obviously stricken as unnecessary because the section involved related only to the collection of State taxes, and § 92-3805 related to the collection of county taxes, and the increased compensation

was allowed whether the taxes collected after January 1, 1938, were delinquent or not.

Here it is pertinent to emphasize that the provision for increased payment of 10% on the amount in excess of 90% of the taxes collected did not originate in the unofficial Code § 92-5304, but the source of it is traceable to the act of 1938 and 1939, supra, relating to § 92-5301, and the contention of the respondent that the unofficial § 92-5304 constitutes independent authority for commissions, payable to the Tax Commissioner of Troup County, on all taxes collected, both State and county, must fall.

The act of 1949 (Ga. L. 1949, p. 1460) placed the officials of Troup County on salaries to be fixed by the county authorities, the commissions for collecting *county* taxes being thereby abolished. It did not, however, abolish the commissions which were payable by the State to the tax commissioner for collecting *State* taxes. Neither the act of 1949, supra, nor the unofficial Code § 92-5304, nor any act enacted since the act of 1949 provides for any commissions to be paid to the tax commissioner for collecting county taxes. Section 7 of the act of 1949, supra, furnishes the answer to the contentions of the respondent. It is there stated: "The salaries of the various officials herein fixed shall be their sole compensation, and all fees accruing after January 1, 1953 [the date when the respondent took office], are hereby abolished so far as the same constitute the compensation of said officers *except that the tax collector and tax receiver or tax commissioner shall continue to receive as part of their compensation the fees from the State as hereinbefore provided;* but the same schedule of fees and costs prescribed under existing laws shall remain for the purpose of ascertaining the sum or sums to be paid into the treasuries of the counties coming under this Act." (Italics ours.) This act has been held applicable to Troup County, as shown in the opinion of this court, and has never been declared invalid. Neither the act of 1951, supra, nor the act of 1953 (Ga. L. 1953, Jan.-Feb. Sess., p. 234) amending Code § 92-5301, and changing the schedule and rates as a basis for payment of commissions to the tax commissioners or tax collectors for collecting State taxes makes any provision for compensation for collecting county taxes.

*Motion for rehearing denied. All the Judges concur.*